# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

DARIEN DAMAR CLARK,

    Plaintiff,

v.

MEISHA SHEDRICK,

    Defendant.

CIVIL ACTION NO.: 6:15-cv-81

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement. (Doc. 1.) On August 6, 2016, Defendant Meisha Shedrick ("Defendant") filed a Motion for Summary Judgment. (Doc. 27.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant filed a Motion for Summary Judgment and that a response must be filed by August 30, 2016. (Doc. 29.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) Plaintiff filed no Response to Defendant's Motion for Summary Judgment, and the Court received no indication this Notice or Defendant's Motion was undeliverable. However, "the

district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant's unopposed Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint **WITH PREJUDICE**, and **DIRECT** the Clerk of Court to **CLOSE** this case. In addition, I **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND[1]

Plaintiff alleges that Defendant, a correctional officer at Georgia State Prison, used excessive force against him on November 1, 2014. (Doc. 1, p. 5.) Plaintiff states that, during an emergency lockdown in his dormitory that morning, Defendant slammed Plaintiff's cell door closed while his fingers were stuck in the door. (Id.) After Defendant slammed the cell door, Plaintiff screamed for Defendant to open the door because his fingers were stuck. (Id.) Defendant walked away, and another officer had to have the cell door opened. (Id.) Plaintiff alleges that he suffers intense pain and nerve damage in his fingers as a result of this incident. (Id.) The Court ordered that Plaintiff's Complaint be served upon Defendant based on Plaintiff's contention Defendant used an excessive amount of force against him, in violation of the Eighth Amendment. (Doc. 14.) Defendant then filed the instant Motion for Summary Judgment. (Doc. 27.)

---

[1] The recited allegations are taken from Plaintiff's Complaint. However, given that Plaintiff has not responded to Defendant's Motion for Summary Judgment, including Defendants statement of facts, the Court need not accept Plaintiff's allegations as true.

**DISCUSSION**

Defendant asserts in her Motion that Plaintiff cannot sustain his Eighth Amendment claim against her. (Doc. 27-1, p. 9.) Defendant also asserts she is entitled to qualified immunity. (Id.) Defendant maintains Plaintiff's claims for monetary damages are barred by the Prison Litigation Reform Act because he did not suffer any more than a *de minimis* injury as a result of Defendant's actions. (Id. at p 11.) In moving for summary judgment, Defendant relies on her Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, and two declarations sworn under penalty of perjury.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his claims, and Defendant's Motion is due to be granted as a result.

**I.    Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to

any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge her burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.     Plaintiff's Use of Force Claim**

Defendant contends she responded to an "assistance needed" call in the F-4 dormitory on November 1, 2014, due to a lockdown in that dormitory. (Doc. 27-1, p. 2.) Defendant maintains she and several other correctional officers walked through the F-4 dormitory yelling "lockdown" to notify the inmates that their cell doors were being locked at approximately 9:50 a.m. (Id.) As Defendant walked through the F-4 dorm, the F-dorm control operator notified Defendant that certain F-4 cell doors were not secured properly. (Id.) To ensure that each cell door was properly closed and locked, Defendant grabbed the exterior handle of each F-4 dormitory cell door as she proceeded down the hall to manually close the doors. (Id. at pp. 2–3.) Defendant contends Plaintiff's cell door was cracked open when she reached his cell. (Id. at p. 3.) Accordingly, Defendant closed the cell door and continued walking down the hall. (Id.) Plaintiff's hand, which was placed inside the opening of the door, became stuck after Defendant closed the cell door. Defendant maintains that she did not see Plaintiff's hand before she closed

4

the door and that she did not hear him scream for help over the noise of the other prisoners during the lockdown. (Id. at pp. 3–4.)

Defendant avers she first realized that Plaintiff's hand had been closed in his cell door several minutes after the completion of the lockdown when another officer informed her that Plaintiff had been injured. (Id. at p. 4.) Defendant then escorted Plaintiff to the medical unit, where he received an examination. Plaintiff's hand was swollen but had full range of motion. (Id.) Plaintiff was given ibuprofen and was instructed to minimize the use of his injured hand. (Id.) X-rays of Plaintiff's hand following the incident returned normal results.[2] (Id.) Accordingly, Defendant avers she used the minimum amount of force necessary to secure the dormitory for lockdown. (Id. at p. 7.) Defendant maintains her actions were taken without malice and without intent to cause Plaintiff any harm, as she did not realize his hand was stuck in the door when she closed it. (Id. at p. 9.)

Plaintiff's excessive use of force claim and Defendant's Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312,

---

[2] Plaintiff previously suffered a gunshot wound to his left hand and reported numbness in that hand six months before Defendant shut Plaintiff's left hand in his cell door. (Doc. 27-5, p. 2.)

320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)). "'When considering these factors, [the court] 'give[s] a wide range of deference to [jail] officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.' [The Court] examine[s] the facts as reasonably perceived by [Defendants and their subordinates] on the basis of the facts known to [them] at the time.'" Shuford v. Conway, 86 F. Supp. 3d 1344, 1357 (N.D. Ga. 2015) (quoting Fennell, 559 F.3d at 1217–18) (alterations in original).

### A. Objective Prong

In this case, Plaintiff's claims fail under the objective prong of the Eighth Amendment's deliberate indifference analysis. In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" Johnson v. Moody, 206 F. App'x 880, 884–85 (11th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9–10 (1992)). Furthermore, an injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than *de minimis* injury." Id. (citing Boxer v. Harris, 437 F.3d

1107, 1111 (11th Cir. 2006); see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

First, Defendant's conduct was neither sufficiently serious nor "repugnant to the conscience of mankind." Defendant declared that she did not realize that Plaintiff's hand was stuck in the door before she closed it, nor did she hear Plaintiff or any other inmate scream that Plaintiff's hand was stuck due to excessive noise in the dormitory. (Doc. 27-4, p. 3.) Corroborating Defendant's claim that she did not realize Plaintiff's hand was placed inside the opening of the door, Plaintiff testified that he "snatch[ed] the door" as Defendant approached his cell and that he "didn't even know it was her." (Doc. 27-6, p. 3.) Plaintiff further declared that Defendant is not "a bad person or none of that but [she] was negligen[t]." (Id. at p. 6.) Accordingly, the uncontroverted evidence before the Court demonstrates that Defendant mistakenly shut Plaintiff's hand in the door. Therefore, Defendant's conduct was not sufficiently serious under the Eighth Amendment. See O'Connor v. Carnahan, No. 3:09cv224/WS/EMT, 2012 WL 2201522, at *13 (N.D. Fla Mar. 27, 2012) (finding that "the amount of force alleged by Plaintiff—that a correctional officer 'slammed' the cell slot door against Plaintiff's arm and then 'braced' it there for several seconds" does not establish the objective component of an excessive force claim).

Second, Plaintiff did not suffer more than *de minimis* injury as a result of Defendant's actions. Here, Plaintiff suffered swelling of his hand but had full range of motion. He was treated with ibuprofen, and subsequent x-rays returned normal results. (Doc. 27-5, p. 2.) Furthermore, the uncontroverted evidence before the Court shows that, to the extent Plaintiff suffers permanent, periodic numbness to his left hand, these symptoms are attributable to a prior

gunshot wound. (Id.) Plaintiff's injuries do not amount to more than *de minimis* injury and, therefore, do not satisfy the objective component of Plaintiff's excessive force claim. See Moody, 206 F. App'x at 885 (finding that prisoner whose finger was slammed into metal tray flap by correctional officer did not suffer more than *de minimis* injury, despite his receipt of medical treatment for six months following the incident, as he was treated with only a tetanus shot, bandages, and non-prescription pain relievers, his finger was not broken or fractured, and there was no evidence that he suffered any permanent injury or debilitating pain).

Consequently, the nature in which Defendant applied force in this case, in combination with the minimal injury suffered by Plaintiff, simply does not rise to the level to implicate the Eighth Amendment. Consequently, Plaintiff cannot sustain his Eighth Amendment claim against Defendant.

### B. Subjective Prong

While Plaintiff failed to present evidence satisfying the objective component of his claim, the Court will, out of an abundance of caution, proceed to the subjective component of Plaintiff's excessive force claim to determine whether Defendant exerted force upon Plaintiff maliciously and sadistically for the very purpose of causing harm rather than as a good faith effort to maintain or restore discipline. As discussed below, even when viewing the facts in a light most favorable to Plaintiff, Plaintiff has not shown that Defendant acted wantonly and unnecessarily to cause harm.

Through her supporting materials, Defendant shows the following in light of the factors the Court is to consider when analyzing whether an Eighth Amendment use of force was done sadistically and for the very purpose of causing harm.

1. **The Need for the Exercise of Force**

The first factor the Court looks to is whether there was a need for the exercise of force in a particular situation. In this case, Plaintiff's dormitory was on lockdown. (Doc. 27-1, p. 2.) The F-dorm control operator informed Defendant that certain cell doors within the F-4 dormitory remained open, despite the lockdown. (Doc. 27-2, p. 3.) Plaintiff's cell door was among those open cell doors. (Id.) Accordingly, Defendant was authorized to use some measure of force to close Plaintiff's cell door in the interest of maintaining order in the prison during a lockdown, even if Plaintiff was obstructing the door. Thus, this factor weighs in Defendant's favor. Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting that an "official need not wait until disturbances are dangerous before using force to restore order") (citing Fennell, 559 F.3d at 1218).

2. **The Relationship Between the Need for the use of Force and the Amount Applied**

As to the second factor, there is no evidence that Defendant subjectively intended to use more force than was absolutely required to maintain or restore order in the F-4 dormitory during lockdown. As discussed above, the use of force—Defendant's closing of Plaintiff's cell door—was necessary, as the dormitory was on lockdown and Plaintiff's cell door remained open. Furthermore, the uncontroverted evidence before the Court shows that the amount of force applied was minimal. Defendant slid Plaintiff's cell door shut as she was walking by and then proceeded down the hallway. Cf. Hutcheson v. Binion, No. 4:09CV056-M-S, 2011 WL 2669078, *3 (N.D. Miss. May 3, 2011) (finding that the first time an officer slammed a prisoner's arm may have been inadvertent in an attempt to maintain order, but that the officer's repeated slamming of the inmate's arm crossed into the "unreasonable or even malicious

territory."). Because there is no evidence that Defendant could have employed lesser force to close Plaintiff's door during the lockdown, this factor also weighs in favor of Defendant.

### 3. The Extent of Plaintiff's Injuries

The extent of Plaintiff's injuries also weighs in Defendant's favor in Plaintiff's excessive force claim. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

Here, the medical evidence of record reveals that Plaintiff suffered "slight swelling and some tenderness" following the incident, but he maintained full range of motion of his hand and did not suffer any broken bones or fractures. (Doc 27-5, p. 2.) Plaintiff was given only ibuprofen to treat his pain. (Id.) Although Plaintiff maintains he experiences numbness in his hands and is being treated for intermittent left hand paresthesias, as noted above, Plaintiff suffered these symptoms before having his hand shut in the cell door due to a prior gunshot wound. (Id.) This objective evidence contradicts Plaintiff's assertion that he suffered severe injuries or that the amount of force Defendant used against him was excessive. Consequently, this factor also cuts in Defendant's favor.

#### 4. **Extent of Threat to the Safety of Staff and Other Inmates**

Though the inmates were contained in their cells during the use of force incident, if the officers had been unable to gain the inmates' compliance with their direct orders, a disturbance in operations or some other unrest could have occurred. If the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved. This is particularly true here, where officers were securing the area for a lockdown. Thus, this factor weighs in Defendant's favor.

#### 5. **Any Efforts Taken to Temper the Severity of the Forceful Response**

Given Plaintiff's injuries resulting from Defendant's use of force, little effort was needed to mitigate the effects of the force. Given the low severity of Plaintiff's injury, the evidence reveals no impropriety and, therefore, cuts in Defendant's favor. Alday, 2014 WL 1320093, at *7. Plaintiff's hand was caught in his cell door at approximately 9:50 a.m., and Defendant personally escorted him to medical at 10:00 a.m. (Doc. 27-4, p. 4.) There is no evidence that Defendant attempted to delay any medical treatment for Plaintiff. In fact, the evidence before the Court indicates that Defendant not only promptly took efforts to temper the injury to Plaintiff's hand, but she personally ensured that he received medical care and then escorted him back to his cell.

Plaintiff fails to satisfy the objective prong of his excessive force claim as Defendant only applied minimal force and Plaintiff only suffered minimal injury. As to the subjective prong, all of the five factors this Court examines weigh in Defendant's favor. Consequently, the Court should **GRANT** Defendant's Motion for Summary Judgment.

It is unnecessary to address the remaining grounds of Defendant's Motion.

**III.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied).  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion for Summary Judgment, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

---

[3]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's unopposed Motion for Summary Judgment. (Doc. 27.) I also **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint **WITH PREJUDICE**, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 7th day of March, 2017.

_R. Stan Baker_
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA